UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO: 5:23-cv-00327-PRL

MARTIN FERRY, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

MID-FLORIDA PATHOLOGY, LLC., a
Florida Limited Liability Company,
STRATEGIC BUSINESS OUTSOURCING, LLC,
a Florida Limited Liability Company, and
OLEKSANDR ONUSHKO, Individually

    Defendants.

_____/

**JOINT MOTION FOR FINAL APPROVAL OF THIRD AMENDED
COLLECTIVE ACTION SETTLEMENT AGREEMENT**

Plaintiff Martin Ferry, on behalf of himself and those similarly situated

("Plaintiff") and Defendants, Mid-Florida Pathology, LLC, Strategic Business

Outsourcing, LLC, and Oleksandr Onushko (collectively, "Defendants")( hereinafter,

the "Parties"), by and through their undersigned counsel, entered into a Third Amended

Collective Action Settlement Agreement (the Agreement")(attached as Exhibit A) to

resolve Plaintiff's claims on a collective basis. Plaintiff, through Counsel, sent notice

2

to the settlement collective and the settlement opt-in and objection periods have concluded. The Parties now move for final approval of this settlement. In addition, Plaintiff respectfully moves this Court for an Order approving an award of attorneys' fees and reimbursement of litigation costs incurred pursuant to 29 U.S.C. §216(b). Defendants do not oppose Plaintiff's request. In Support of this Joint Motion, the Parties submit the following:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    Plaintiff Martin Ferry filed this collective action against Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA") on May 23, 2023 (ECF No. 1) (the "Lawsuit" or the "Action"). *See* Declaration of Noah Storch attached as Exhibit B. In the Lawsuit, Plaintiff alleged that Defendants improperly failed to pay Courier/Drivers full and proper overtime compensation for all hours worked over forty (40) hours in one or more workweeks in violation of the Fair Labor Standards Act,§ 201 *et seq.* ("FLSA"). Specifically, Plaintiff alleged that Defendants violated the FLSA by auto-deducting lunches and failing to record actual hours worked in one or more work weeks during the relevant period. Before filing the Lawsuit, the undersigned counsel spent a significant amount of time investigating the claims diligently after being retained. In the Collective Action Complaint dated May 23, 2023, on behalf of himself and a class of purportedly similarly situated others, Plaintiff claims he and other Courier/Drivers often worked more than forty (40) hours in one or

3

more workweeks and were not paid proper overtime. Plaintiff seeks to recover wages for overtime allegedly not paid to him and a putative class of similarly situated Courier Drivers during the three (3) year period preceding this Complaint's filing. On July 28, 2023, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Collective Action Complaint. (ECF Nos. 20-22). In its Answer, Defendants deny Plaintiff's allegations and assert that the non-exempt hourly Courier/Driver employees, including Named Plaintiff, were compensated properly. On September 25, 2023, this Court issued its FLSA Scheduling Order ("Order"). (ECF No. 23). On October 12, 2023, Plaintiff filed interrogatory responses with the Court. (ECF No. 24). In his interrogatory responses, Plaintiff claims to have worked 10-20 hours per week in unpaid overtime during his employment with Defendants. *Id.*

On November 1, 2023, Defendants filed their Verified Summary (ECF No. 25) and provided Plaintiff's Counsel with pay and time records.

Pursuant to the Court's FLSA Scheduling Order, the Parties were required to schedule a settlement conference to attempt to resolve the case. (ECF No. 23-2¶3). Counsel for Plaintiff and Counsel for Defendants began discussions and negotiations to attempt to settle the matter on a claims-made basis, *i.e.,* the Parties intended to agree on a maximum amount Defendants would pay to settle all claims; the Parties would offer a pro-rata amount of a maximum amount to those putative collective members that decided to join the lawsuit.

Following several conferences among counsel, as well as numerous additional resolution discussions, on November 17, 2023, the Parties reached a tentative agreement on the extended material terms of this claims-made settlement. The Parties agreed upon the maximum gross amount Defendants would pay in exchange for settling this matter. The Parties also agreed to move forward with claims made/common fund settlement fund. On December 22, 2023, the Parties filed a Joint Notice of Settlement. (ECF No. 35).

At that time, among other agreements, under the terms of their Settlement Agreement and Release, according to the Defendants, through Counsel, there were approximately 28 current Courier/Driver employees who consisted of the class who would be invited to participate in the Settlement and receive a pro-rata amount of the maximum amount Defendants has agreed to pay.

Among other dissenting views, Defendants vigorously denies Plaintiff and/or the other Courier/Drivers worked anywhere near the hours Plaintiff claims they worked while employed by Defendants. Additionally, Defendants maintain Plaintiff has not and could not establish a "willful" violation such that a third year of liability would be appropriate. Following extensive discussions, the Parties agreed to a two (2) year statute of limitations from May 23, 2021, through the date of this Court's Order of Approval.

On January 12, 2024, the Parties moved for approval of the collective action settlement. *See* ECF No. 38. This Court denied that motion on February 9, 2024, outlining several areas of concern for the Court. *See* ECF No. 39. Defendants produced the Class List to Plaintiff's Counsel, but the list included a total of seventy-eight (78) potential class members, not twenty-eight (28) as the potential class members included former employees no longer employed by Defendants. After going through the Class Data, ultimately there were 74 potential class members. The Parties renegotiated the terms of the settlement and Defendants agreed to pay an additional $50,000 to resolve the entire collective action for a total of $325,000.

The Parties filed a Renewed Motion on July 1, 2024, (ECF No. 45) which was again denied based on the Court's primary concerns over an objection period as outlined in Order dated July 10, 2024. (ECF No. 46). On July 24, 2024, the Parties filed a Stipulated Motion and Memorandum of Law. (ECF No. 47). The Court again denied the Parties' Motion. (ECF No. 48).

On August 9, 2024, the Parties filed their Joint Amended Third Motion for Settlement which included an objection process and a detailed timeline for the notice process and submitted that Agreement for approval in accordance with the Court's two-step process. *See* ECF No. 53. On August 28, 2024, the Court approved the settlement as fair and reasonable. Additionally, in that Order, the Court requested the Parties submit revised documents to be approved before the mailout process could

begin.  *See* ECF No. 54.    On September 18, 2024, the Parties filed the revised documents, and the Court entered an Order on September 19, 2024, authorizing Plaintiff to distribute the Notice and consent forms.  *See* ECF No. 54.

The Notification Letter and Consent and Claim forms were distributed on October 21, 2024, to the seventy-four (74) current/former Courrier/Drivers for Defendants.  The Court's thirty-five (35) day deadline to opt-in to the case and/or submit an objection was Monday, November 25, 2024.

There are a total of forty (40) Class Members, including named Plaintiff Martin Ferry.  The Parties believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved. The settlement grants relief for the Plaintiffs and provides an appropriately limited release from the Defendants for federal and state wage and hour claims relating to the overtime and the total settlement amount is properly discounted to account for the probability of success.

## II.    <u>SUMMARY OF THE SETTLEMENT TERMS</u>

The settlement agreement outlining the specific terms is attached as Exhibit A. In accordance with the Class Agreement, Defendants have agreed to a qualified settlement fund and a maximum settlement amount of $325,000.00 dollars ("Common Fund"), which includes overtime, liquidated damages, fees, costs, and amounts of any kind.

$160,090.00 of the Common Fund constitutes potential payments to the FLSA Putative Collective Members ("Net Common Fund") to be distributed on a *pro rata* basis in accordance with Paragraph 2(c) of the Settlement Agreement.  In total, $118,657.42 of the $160,090.00 net common fund (74.12%) is being paid out to those who signed claim forms.  *See* Settlement Payout Chart attached as Exhibit C.

Plaintiff's attorneys' fees and costs, including the administrative costs of the notice and settlement process in the amount of  $135,000.00.  The costs to date are $2,932,67, which includes the administration of the Notice process.  *See* Exhibit B-1.

The agreement also provided for mailing and e-mailing of the proposed Notice and Claims Administration Form giving the FLSA Putative Collective Members an opportunity to "opt-in" to the settlement agreement, which has occurred as described below. Those individuals had 35 days to submit a Claim Form or object to the Settlement. *See* Paragraph 2(i) of Exhibit A. 40 Putative Collective Members opted in. The formula for the amount to be paid to each FLSA Putative Collective Member is described in Paragraph 2(e) of the Agreement and was described in the Parties' previous motion to approve (ECF No. 53]. If final approval is granted, all collective members who submitted valid and timely Claim Forms will release all  claims that relate to the failure to pay overtime under the FLSA and under applicable state wage and hour laws as alleged in the Complaint relates to the alleged overtime of the Class Members.  No other statutory or common law claim would be released.

### III.    <u>Notice and Objection Period.</u>

Pursuant to the settlement agreement, the Parties undertook the notice process as approved by this Court.  The Parties agreed that Plaintiff's Counsel,  experienced in class and collective actions, would complete the notice process. During the notice process, Counsel for Plaintiff mailed and e-mailed the approved forms to a total of seventy-four (74) collective members, including named Plaintiff, Martin Ferry.   In total, forty (40) collective members returned timely and valid claims forms, including Named Plaintiff, Martin Ferry.  During the notice process, the Parties did not receive any objections from collective members.

### IV.    <u>Standard of Review</u>

FLSA collective action settlement agreements require judicial approval.  *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982).  Because the settlement of a FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.").

9

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l. Bank*, 216 U.S. 582, 595 (1910). Indeed, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."). When asked to review and approve the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc*., 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The settlement in this case was finalized after protracted negotiations. As the parties explain in more detail below, this Agreement is fair and reasonable, and should be finally approved.

## V.    <u>The Agreement is Fair and Reasonable</u>

The Court should finally approve the Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendants has agreed to pay is fair and adequate; there is a significant risk to the collective members of recovering significantly less than the monies claimed and proving that they worked the hours claimed, and risk as to securing a final determination as to whether the case should proceed as a collective action, the

collective members received adequate notice sufficient for each potential opt-in to assess his or her rights; the collective members are sufficiently similar for certification for settlement purposes; and the amount of attorneys' fees and costs requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily chose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. Any potential collective member who did not join this settlement is not bound by it and can still pursue their own action.

A.    <u>Settlement is the product of arm's length negotiations and of a bona fide dispute.</u>

The settlement in this case was reached after counsel for the Parties had exchanged significant individualized collective member data, engaged in several months of discussions and settlement conversations.  It is the opinion of counsel for both parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Weldon v. Backwoods Steakhouse, Inc.*, 2014 WL 4385593, at \*3 (M.D. Fla. Sept. 4, 2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement."). Finally, "the fact that the continued negotiations of settlement agreement terms and Notice documents were lengthy" and continued and involving additional negotiation" further demonstrates the absence of collusion. *George v. Acad. Mortg. Corp. (UT),* 369 F.

11

Supp. 3d 1356, 1370 (N.D. Ga. 2019). There is no evidence of collusion here.

      B.    <u>Probability of Success and of Decertification</u>

    2.    In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See*, *e.g.*, *Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). As discussed above, the primary legal issue is the probability of the collective members recovering significantly less than the monies claimed and proving that they worked the hours claimed, and risk as to securing a final determination as to whether the case should proceed as a collective action. This could involve questions of fact (such as the level of discretion exercised by collective members) and then questions of law for the Court to determine. Additionally, disputes exist over the hours worked and claimed by Plaintiffs and the collective. Lastly, the Parties hotly dispute whether among other dissenting views, Plaintiff and/or the other Courier/Drivers worked anywhere near the hours Plaintiff claims they worked while employed by Defendants. Additionally, Defendants maintain Plaintiff has not and could not establish a "willful" violation such that a third year of liability is appropriate. Following extensive discussions, the Parties agreed to a two (2) year statute of limitations from May 23, 2021, through the date of this Court's Order of Approval.

12

During these litigation and settlement discussions, the formula for the amount to be paid to each Putative Class Member is described in paragraph (e) of the Amended Class Agreement and proves additional detail as to how it was calculated. It includes each Putative Class Member's individual weeks worked, along with an average salary rate of pay, overtime rate and overtime compensation based on an estimated number of overtime hours worked each workweek in the relevant period.

The settlement provides immediate and substantial benefits to Plaintiff and the collective at an amount well-above the hours and weeks Defendants claim the collective worked. The strong likelihood that any recovery would take years also weighs in favor of approval.  Indeed, public policy favors settlement, especially in cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation").  Plaintiffs' claims are not likely to be decided until after extensive merits discovery, a motion for decertification, motions for summary judgment and perhaps a trial.  Even if Plaintiffs were to prevail, there would likely be an appeal.   Absent settlement, the FLSA Putative Collective Members are not likely to see any recovery for years. That fact alone weighs strongly in favor of final approval.

     C.    <u>Due Process Considerations</u>

As explained above, the Parties conducted the notice process approved by the Court, which was fair and adequate, resulting in 52.70% of eligible collective members claiming their portion of the settlement. This is a higher percentage of claimants than is typically seen in class/collective action settlements.  Also, no objections also support that the settlement was well received and should be approved. *See Lee v. Ocwen Loan Servicing, LLC,* Case No. 14-CV-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable….") (internal quotations omitted).  Lastly, because any collective member who did not participate in this settlement is not bound and can file their claim, no absent class members exist for due process considerations.

    D.    <u>This Court Should Grant Final Approval</u>

In accordance with the legal principles outlined above, the Parties respectfully request the Court finally approve the Agreement.  This adversarial action involves disputed factual and legal issues that could provide the Plaintiffs and the collective a complete or partial bar to their claims. Ultimately, the Parties recognized the significant risks in proceeding with this collective action lawsuit.  The Parties agree that the terms of settlement reached reflect a reasonable "give-and-take" on the major issues in dispute. The settlement also provides that the Plaintiffs will receive overtime compensation under the agreement for each workweek, even if they may not have worked *any* overtime hours in a particular workweek. The Parties agree that the

14

negotiated terms of settlement reflect a reasonable compromise of all disputed issues, and that the negotiated settlement is in the Parties' best interest.

### VI.    **Attorneys' Fees and Costs**

The Supreme Court and Eleventh Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D. Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions"); *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1278 (11th Cir. June 3, 2021) (describing the percentage method applied in *Camden I*). In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.* 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a

mandatory award of "Costs of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b).

The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). Precisely for this reason, in *Camden* the Eleventh Circuit criticized the lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden,* 946 F.2d at 774 (citations and alterations omitted).

16

The Settlement Agreement provides that Plaintiffs' counsel will receive $135,000.00 in payment of attorney's fees and costs, including all costs and the costs of administration of the settlement.  These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs.  Plaintiffs' Counsel asserts that these amounts are fair and reasonable, given the fees and costs incurred in this matter, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs. Plaintiffs' Counsel also asserts that he is highly experienced in wage and hour collective actions and has extensive experience litigating FLSA collective actions.

As stated in *Vogenberger v. ATC Fitness Cape Coral, LLC*, Case No. 2:14-cv-436-FtM-29CM, 2015 WL 1883537, at *4, (M.D. Fla., Order of April 15, 2015), in an FLSA case, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face."  2015 WL 1883537, at *5 (finding the requested fees reasonable "upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement"); *see also King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007).  The Plaintiff actively participated in the negotiation of the settlement, including separate negotiation of the

attorney's fees and reasonable costs and litigation expenses.[1]    Further, the amount being paid to Class Counsel will not reduce the amount being paid to the Plaintiff and Class Members.   Class Counsel asserts that the amount of attorneys' fees and costs is reasonable in light of the fact that the settlement was only obtained after extensive investigation, research, analysis, pre-mediation legal briefing, negotiations, and class administration of the settlement.   Class Counsel litigated this matter on a contingency fee basis, risking non-payment, further supports the attorneys' fees request. Defendants do not oppose Class Counsel's request for attorneys' fees and costs in the amounts provided by the Class Agreement.   Moreover, the efficient resolution of this case, without prolonged litigation, was a direct result of Class Counsel's experience in handling complex litigation and extensive knowledge of wage and hour law.   *See*, *e.g.*, *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model").

## VII.   <u>Conclusion</u>

Based upon the foregoing, the Parties request that the Court enter an order

---

[1] Courts frequently approve attorneys' fee awards of forty percent in FLSA cases.   *See, e.g.*, *Mansfield v. Castaways Backwater Café, Inc.*, No. 07 Civ. 401, 2008 U.S. Dist. LEXIS 62909, at *2 (M.D. Fla. Aug. 18, 2008) (adopting magistrate's order approving 40% contingency fee from settlement amount in FLSA action).

approving the settlement agreement proposed by the Parties, including the settlement amounts to the Plaintiffs, Plaintiffs' attorney's fees and costs, and all other terms of the Parties' Settlement Agreement, and dismiss this Action with prejudice.

   Dated this 3rd day of December 2024

Respectfully submitted,

| | |
|---|---|
| */s/ Noah E. Storch*<br>Noah E. Storch, Esq.<br>Florida Bar No.: 0085476<br>RICHARD CELLER LEGAL, P.A.<br>7951 SW 6th Street, Suite 316<br>Plantation, FL 33324<br>Telephone: (866) 344-9243<br>Facsimile: (954) 337-2771<br>E-mail:<br>**noah@floridaovertimelawyer.com**<br><br>*Trial Counsel for Plaintiffs* | */s/ Megan J. Nowicki*<br>Megan J. Nowicki, Esq.<br>Florida Bar No. 1000366<br>J. Stephen McDonald, Esq.<br>Florida Bar No. 0468940<br>Robert Clayton Roesch, Esq.<br>Florida Bar No. 13931<br>SHUFFIELD, LOWMAN & WILSON, P.A.<br>1000 Legion Place, Suite 1700<br>P.O. Box 1010<br>Orlando, FL 32802-1010<br>Telephone: (407) 581-9800<br>Facsimile: (407) 581-9801<br>E-mail:<br>**mnowicki@shuffieldlowman.com**<br>**smcdonald@ShuffieldLowman.com**<br>**rclayton@shuffieldlowman.com**<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2024, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF filing system. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Noah E. Storch*
Noah E. Storch, Esq.